The State, ex rel. Nemeth, *v.* Industrial Commission of Ohio.

(No. 4879—Decided May 26, 1953.)

*Mr. Gilbert Weil* and *Mr. John C. Duffy,* for relator.

*Mr. C. William O'Neill,* attorney general, and *Mr. Chalmers P. Wylie,* for respondent.

Hornbeck, J. This is an action in mandamus, seeking an order requiring the respondent commission to make an award to relator under Section 1465-80, General Code, because he is afflicted with silicosis contracted in his employment and a change of occupation is medically advisable.

The factual background, upon which relator's cause of action is predicated, is that on and prior to July 25, 1950, he was employed as a molder with the John Harsch Bronze & Foundry Company, an employer amenable to the Workmen's Compensation Act and paying premiums according to law into the State Insurance Fund; that on July 25, 1950, he reported to his employer that he was ill and on the next day, i. e., July 26, 1950, entered a hospital for treatment of silicosis; and that, thereafter, he filed a claim for total disability due to silicosis. The silicosis referees, to whom the claim was referred, found on December 2, 1950, that relator's condition was not totally disabling, but that he did suffer from simple silicosis. On April 9, 1951, the Cleveland District Board of Claims disallowed relator's claim for total disability and again ordered the file to be referred to the silicosis referees on the question "of allowance of claim for a change of occupation." On April 9, 1951, the claimant filed his application for an award for a change of occupation due to having contracted silicosis. It appeared that on the date he reported his illness to his employer, he discontinued his employment, going to the hospital the next day, and not having been able to work since. The Silicosis Referee Board recommended that relator be granted an allowance of change of occupation, as did the Medical Board of Review on August 23, 1951. Upon reference to the respondent commission on September 13, 1951, and rehearing on May 22, 1952, it disallowed relator's application, on the ground that the application does not conform to the statutory provisions of·Section 1465-80, General Code, respecting a change of occupation in which simple silicosis is involved. The commission relied upon a regulation defining the requisite steps to an award under Section 1465-80, General Code, which regulation provides as follows:

"(1) By an application for benefits under the amendment.

"(2) Favorable recommendation by the silicosis referees.

"(3) The commission order the change following the recommendation of the silicosis referees. If all these things happen, the change in occupation must be made by the claimant within a period of three months after the commission's order approving the change."

In part, it is the claim of relator that when the Medical Board of Review made a favorable report and recommended an allowance for change of occupation, the board should, as a matter of law, have ordered an award. We believe that in this case the contention is well made. Generally, the action of the Medical Board of Review relates only to a question to be determined from the professional medical standpoint, namely, whether the relator was suffering from silicosis and whether a change of occupation was medically advisable. The procedural questions and the substantive legal right of the relator under the Code to an award are for determination of the commission, which action may not be questioned except for abuse of discretion. Here, the law was misinterpreted, and there is left the medical question only.

The board construed Section 1465-80, General Code, to preclude an award to claimant for change of occupation because of silicosis contracted in his employment, unless at the time the order of the commission finding that the applicant suffered from silicosis, he was in the same employment as when he suffered his attack, and that after this award the change of occupation must be made within a period of three months.

The section, in so far as applicable, reads:

"If the 'silicosis referees' provided for by Section 1465-68a of the General Code, shall find that an employee has contracted silicosis * * * and that a change

of such employee's occupation is medically advisable in order to decrease substantially further exposure to silica dust and if such employee shall, within a period of three months thereafter, discontinue employment or change his occupation to an occupation in which the exposure to silica dust is substantially decreased, the Industrial Commission shall allow to such employee, the sum of * * *.''

Before going to the determinative question in this case, it is well to consider some well defined principles. In *Industrial Commission* v. *Pora,* 100 Ohio St., 218, 125 N. E., 662, Chief Justice Nichols, at page 222, said:

''The real spirit of this act is to measurably banish technicality and to do away with the nicety of distinction so often observable in the law, and commands a liberal construction in favor of employes.''

The court said the same, in substance, in *Industrial Commission* v. *Weigandt,* 102 Ohio St., 1, 130 N. E., 38. It is common knowledge that injured workmen are advised to rely upon the services afforded by the Industrial Commission and its staff. So, in this case, involving a rather complex statute, the applicant needed expert advice. He was given a form of application wherein he sought to recover compensation under the occupational disease section of the Code, viz., Section 1465-68a. Under this section, he was not entitled to compensation and incidents thereto unless he was totally disabled.

In *State, ex rel. Stelzer,* v. *Industrial Commission* (unreported), No. 2911, Franklin County, we held that a claimant under the compensation law is totally disabled if he is so impaired in body or mind or both as to render him unfit to work at any substantially remunerative employment. We followed this pronouncement in *State, ex rel. Myers,* v. *Industrial Commission,* 28 Ohio Law Abs., 429, and *State, ex rel. Breidigan,* v.

*Industrial Commission,* 36 Ohio Law Abs., 160, 43 N. E. (2d), 114.

Claimant did not have the advantage of legal counsel until after the commission had held against him on his application for compensation. Manifestly, that part of Section 1465-80, General Code, upon which claimant now relies is but another form of benefit in addition to Section 1465-68a, General Code, guaranteed to victims of silicosis.

One thing is projected clearly from this record, namely, that the claimant at all times from the date he first consulted a doctor and when he left his employment one day to go to the hospital the next, suffered from silicosis, and that it was contracted in his employment.

As we read this record, of the 10 or 12 physicians who made diagnoses or passed upon the nature of claimant's illness there was no disagreement. Quite early it was suggested that the second of the first two doctors who examined claimant, namely, Dr. Yarian, stated that an X-ray examination failed to disclose any signs of such disease.

As we read Dr. Yarian's report, in his handwriting and somewhat difficult, he does not say that an X-ray examination failed to show silicosis. He says: "No physical signs of silicosis but shown by X-ray." Later in his report he states that his diagnosis is silicosis. This probably is of no considerable importance, but it was followed by at least two findings of the board of referees and a finding of the Medical Board of Review that the claimant suffered from silicosis, and both bodies stated that claimant was entitled to an award of change of occupation.

It should be noted that the conclusion that claimant had left his occupation is drawn from the fact that he went to the hospital the day after he was ordered there

because of his sickness. He states that he had not been able to work from that day and the findings of the board of referees and the Medical Board of Review that he was not totally disabled do not refute his statement. Thus, we have the physical fact that the claimant left his occupation, if it may be so stated, because he was no longer able to carry on in that occupation.

The original statement of Dr. Lieberman on the claim for compensation does not state that the claimant was totally disabled. This is the language:

"Q. For what period is claimant likely to be disabled? A. Permanently for this type of work."

"Q. If able to do light work, give your professional opinion as to physical impairment in percentage. A. One hundred per cent his type of work."

Thus at the inception, as we have hereinbefore said, the commission was put on notice that the only claim the applicant could properly make would be for an order under the change of occupation statute. We do not say that there is authority to consider both a claim for compensation and a claim for an order of a change of occupation in one and the same proceeding, but surely such procedure would be practical and would eliminate much of the delay which is manifest in this case.

The claimant did, after denial of his claim for compensation, make application under Section 1465-80, General Code, and the commission, invoking its regulation, which we have hereinbefore quoted, held that he had not observed the provisions of Section 1465-80, General Code.

At this time the silicosis referees had made the essential medical determination, namely, that the relator had contracted silicosis, and that a change of the employee's occupation is medically advisable in order to further decrease substantially the exposure to silica dust. In our judgment, this finding is sufficient to support an award by the commission to the claimant under

the applicable statute. Of course, he was not then in the employment because he was unable to work at his occupation. After the medical finding provided by the statute, there follows this language:

"And if such employee shall within a period of three months thereafter discontinue employment or change his occupation to an occupation in which the exposure to silica dust is substantially decreased, the Industrial Commission shall allow to such employee the sum of * * *."

It will be noted this language does not require that the employee change his occupation. It is sufficient if he discontinues employment. This was done according to the finding of the commission. In our judgment, the limitation of three months thereafter is the last date upon which the claimant may discontinue employment and if he has discontinued employment formerly, and especially, if he has done so because of physical inability to accept employment in his trade, this meets the intendment of the statute.

The construction which the commission has given this section would require that an employee who has contracted silicosis by reason of his employment, if able, and in this case unable, should continue to work in the atmosphere which caused his illness until the Board of Silicosis Referees finally acted favorably upon his application for an award because of a change of occupation. We would not ascribe to the Legislature such a purpose, and we do not believe that the statute requires it.

The relator is as a matter of law entitled to an award under the applicable part of Section 1465-80, General Code.

The writ is granted as prayed for.

*Writ allowed.*

WISEMAN, P. J., and MILLER, J., concur.