[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 349.]

THE STATE EX REL. DRESSER INDUSTRIES, INC., MARION POWER SHOVEL, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Dresser Industries, Inc., v. Indus. Comm.*, 1995-Ohio-293.]

*Workers' compensation—Application for permanent total disability compensation—Reviewing physician must accept factual findings of other examining physicians and specialists but need not be encumbered by their conclusions predicated upon such findings.*

(No. 94-637—Submitted June 21, 1995—Decided August 23, 1995.)

APPEAL from the Court of Appeals for Franklin County, No. 92AP-1676.

———————————

{¶ 1} Appellee-claimant, James W. Timmons, was injured on July 26, 1983 in the course of and arising from his employment with appellant, Dresser Industries, Inc., Marion Power Shovel ("Dresser"). His allowed physical conditions quickly resolved. His claim, however, was also recognized for "post-traumatic stress disorder."

{¶ 2} In 1987, claimant moved for permanent total disability compensation. Among the evidence before appellee Industrial Commission of Ohio was the report of psychologist Dr. Lee Howard. He concluded:

"Immediately following his injury, the claimant experienced daytimes [*sic*] flashbacks, nightmares, and fears. These symptoms were pathognomonic for the presence of a post traumatic stress disorder, which at that point was acute, but is now more chronic. In addition, he also experiences a dysthymic disorder with psychogenic pain. This includes depression and an unconsciously [*sic*] based over willingness to emit pain behavior.

"The claimant is in need of aggressive psychological/psychiatric care. He has worked minimally since his Industrial accident and with advancing age (58) the return to work prognosis diminishes.

"OPINION

"1. The claimant is experiencing 30-35% impairment of a psychological/psychiatric nature directly related to the Industrial accident. The accident occurred approximately 4 years ago and he has received psychiatric intervention. He has reached the maximum level of recovery.

"2. The psychopathology directly related to the Industrial accident prohibits the claimant from returning to his previous work activities as 'maintenance' but does not disqualify him from all types of sustained remunerative employment."

{¶ 3} Psychiatrist Dr. Jerold H. Altman wrote in his report:

"Mr. Timmons has a passive dependent personality structure. This is evident in his history. He is relatively uneducated and unskilled. He has managed to be effective in life, maintaining good ego strengths while being employed and supporting his family.

"He was involved in a fire which from the onset was an emotionally traumatic event for him. The description and the manner in which he describes the fire accounts for that.

"Apparently he has been unresponsive to the psychiatric treatment that he has received. He presents himself to me as being unsophisticated, totally unaware and unable to grasp the nature of his disorder. He has gained no understanding and is apparently ill-equipped emotionally to be able to resolve his conflicts and thus, resolve the traumatic neurosis.

"OPINION:

"It is my opinion that the stated accident of July 1983 is the direct and proximal cause of Mr. Timmons Axis I psychiatric disorder. The personality disorder is a characterologic and life long and while it is not caused by the accident,

the personality disorder in part renders Mr. Timmons ill-equipped to resolve the traumatic neurosis.

"It is my opinion that Mr. Timmons' traumatic neurosis is permanent even though it may wax and wane as time passes. Nevertheless, he is no longer able to be employed and carry out responsible duties in employment.

"I judge that Mr. Timmons is one hundred percent impaired on a psychiatric basis alone. That part which is secondary to the accident is judged to be thirty to thirty-five percent permanent partial impairment."

{¶ 4} Claimant's combination of allowed psychiatric and physical conditions prompted a combined effects review by commission psychiatrist Dr. Walter A. Holbrook on July 4, 1987. At the outset, he noted in his report that he had "reviewed and formally adopt[ed] the factual findings presented in the reports of the following physicians * * *. [All the physicians of record were noted.]" He outlined many of the findings observed by others, particularly those of a psychiatric nature. Physically, he found a five percent permanent partial impairment for the burn and a fifteen percent lung impairment. He further wrote:

"Attention is directed to pg. 152, AMA Guide First Edition, 'Criteria for Evaluating Permanent Impairment Due to Psychoneurosis,' from which it's reasonable to conclude from the evidence in the file that claimant suffers a Class III permanent partial impairment to the level which precludes him from performing the duties of any substantial gainful employment.

"* * *

"In the opinion of this reviewer claimant is not only precluded from performing the duties of his usual and customary occupation but is also precluded from performing the duties of any substantial and gainful employment. Claimant is permanently and totally impaired from the combined effects of the allowed conditions of the industrial injury of 7/26/83. It may be noted that this position of permanent total impairment is shared by Dr. Jerald [sic] H. Altman."

**{¶ 5}** On September 26, 1991, the commission found claimant permanently and totally disabled based:

"[P]articularly upon the reports of Drs. Grodner, Mortero, Howard and Holbrook, the evidence in the file and the evidence adduced at the hearing.

"Mr. Timmons is 63 years of age and has an 8th grade education. He has a work history as a village marshal, minister, unskilled laborer and military service. Mr. Timmons possesses no special training or vocational skills. Commission combined effects reviewing physician Dr. Holbrook concluded that Mr. Timmons is permanently and totally impaired. Since Mr. Timmons is permanently and totally impaired, he has been removed from the labor market. Therefore, Mr. Timmons is found to be permanently and totally disabled."

**{¶ 6}** Dresser filed a complaint in mandamus in the Court of Appeals for Franklin County, claiming that the commission abused its discretion in awarding permanent total disability compensation. The appellate court denied the writ.

**{¶ 7}** This cause is now before this court upon an appeal as of right.

———————————

*Vorys, Sater, Seymour & Pease, Elizabeth T. Smith* and *Randall W. Mikes*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Jetta Mencer*, Assistant Attorney General, for appellee Industrial Commission.

*Stewart R. Jaffy & Associates Co., L.P.A., Stewart R. Jaffy* and *Marc J. Jaffy*, for appellee Timmons.

———————————

**Per Curiam.**

**{¶ 8}** Two issues are before us: (1) Did the commission abuse its discretion in relying on Dr. Holbrook's report? and (2) If so, is there nonetheless "some evidence" of permanent total disability? For the reasons to follow, the appellate court's judgment is affirmed.

{¶ 9} In awarding permanent total disability compensation, the commission relied on the reports of Drs. Mortero, Grodner, Howard, and Holbrook. Dr. Holbrook's opinion was based not on personal examination, but upon a review of claimant's medical records. In related assertions, Dresser accuses Holbrook of: (1) considering nonallowed conditions and (2) rejecting the factual findings of claimant's examining physicians. Neither contention is persuasive.

{¶ 10} As to Dresser's first assertion, there is no express mention of claimant's pre-existing psychiatric condition anywhere in Holbrook's narrative. Dresser alleges more subtle evidence of this fact, citing Holbrook's specific reference to Dr. Altman with whom "this position of permanent total impairment is shared." Because Dr. Altman has consistently based his permanent total impairment opinion, in whole or part, on claimant's pre-existing psychiatric condition, Dresser argues that Holbrook inherently considered that condition when he expressly concurred with Dr. Altman.

{¶ 11} We disagree. While Holbrook indeed mentioned Dr. Altman's report, he only "noted" that Altman found permanent total impairment. Holbrook did not say that he based his conclusion on Altman's report. Moreover, review of the psychiatric findings cited by Dr. Holbrook reveals that almost all findings were taken from Dr. Howard's report, not Dr. Altman's.

{¶ 12} Holbrook specifically attributed permanent total impairment to "the combined effects of the allowed conditions of the industrial injury of 7-26-83." Again, there is no express reference to any nonallowed conditions. Coupled with the factors noted above, we decline to reject Holbrook's report on this basis.

{¶ 13} In a similar vein, Dresser contends that Dr. Holbrook did not accept the factual findings of claimant's examining physicians, thereby rendering the report fatally defective. This, too, fails.

{¶ 14} Dresser accurately recites the controlling law. Non-examining physicians must accept the factual findings of those who actually examined the

claimant. *State ex rel. Lampkins v. Dayton Malleable, Inc.* (1989), 45 Ohio St.3d 14, 542 N.E.2d 1105. It is apparent from Dr. Holbrook's factual recitation that the findings of other examiners were accepted. His report expressly so states.

{¶ 15} Dresser's real complaint appears to be with Dr. Holbrook's failure to adopt the impairment conclusions that others attached to those findings. Dresser essentially argues that Holbrook erred in assessing an impairment that exceeded the maximum industrial psychiatric impairment of thirty-five percent found by Drs. Altman and Howard. However, as *State ex rel. Frederick v. Galion Country Club* (1986), 25 Ohio St.3d 364, 365-366, 25 OBR 414, 415, 496 N.E.2d 905, 908, emphasized, "the reviewing physician must accept the *factual findings* of other examining physicians and specialists but need not be encumbered by their conclusions predicated upon such findings." (Emphasis *sic*.) Holbrook was therefore entitled to conclude that claimant's psychiatric symptoms indicated a Class III psychiatric impairment that foreclosed sustained remunerative employment.

{¶ 16} The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER AND COOK, JJ., CONCUR.

————————————